Harry S. PEARE, Individually and on behalf of a class of persons in the State of Indiana similarly situated, Plaintiff,

v.

Harry T. McFARLAND, in his capacity as Director of the Indiana Employment Security Division, William H. Skinner, Paul M. Hutson, Daniel L. Adams, Defendants,

and

United States Department of Labor, Defendant-Intervenor.

No. S 83–69.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 6, 1984.

Katherine A. Martin, Legal Services Program of Northern Indiana, Inc., South Bend, Ind., for plaintiff.

Linley E. Pearson, Atty. Gen. of Ind., Robert K. Robisch, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

R. Lawrence Steele, U.S. Atty., Carol A. Husum, Asst. U.S. Atty., South Bend, Ind., Leslie K. Dellon, Dept. of Justice, Washington, D.C., for defendant-intervenor.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This case is now before the court on cross-motions for summary judgment of plaintiff, Harry S. Peare, and defendant-in-

tervenor, United States Department of Labor (DOL). The sole issue addressed in these motions is whether 26 U.S.C.A. § 3304(a)(15)(A)(i) of the Federal Unemployment Tax Act, 26 U.S.C. § 3304(a)(15)(A)(i) (§ (A)(i)), permits the defendant, Indiana Employment Security Division (IESD), to reduce the unemployment benefits of Social Security recipients whose benefits vested as the result of prior work performed for a non-base period employer. For reasons that follow, summary judgment in favor of the defendant-intervenor, DOL, is granted; the motion for summary judgment of the plaintiff, Harry S. Peare, is denied.

I.

Plaintiff began receiving Social Security retirement benefits at age 65 effective with his application in May 1973. From February 1981 through August 27, 1982, plaintiff worked as a tool and die maker for Mathis Machine Corporation. Prior to his retirement, he had never been employed by Mathis. After being laid off in August 1982, plaintiff applied for unemployment benefits through IESD. The state of Indiana has adopted an interpretation of its unemployment law offset provision, Indiana Code, § 22–4–15–4, that is consistent with that of the Secretary of Labor. As a result, the IESD concluded that plaintiff was eligible for unemployment benefits, but reduced those payments by fifty percent of his Social Security pension payments. Plaintiff exhausted all administrative remedies before application to this court.

This action commenced on February 14, 1983 when plaintiff filed suit against defendant, Harry McFarland, in his capacity as Director of IESD. Plaintiff contends that the state defendants' "practice and policy" under Indiana Code § 22–4–15–4, of deducting from unemployment benefits those Social Security retirement payments vested as a result of prior work performed by a claimant for a non-base period employer, violates the federal pension offset provision, 26 U.S.C.A. § 3304(a)(15)(A)(i), and 42 U.S.C. § 1983. Plaintiff asks this court to declare the IESD practice and policy of pension offsets violative of § (A)(i) and to enjoin those offsets. Further plaintiff seeks payment of retroactive unemployment benefits.

On April 6, 1983, IESD filed a motion to join the DOL as a necessary party under F.R.Civ.P. 19. Plaintiff's response to such motion was filed on April 27, 1983. Thereafter, on May 6, 1983, plaintiff moved for summary judgment and class certification. Defendant filed a cross-claim against DOL and Secretary Donovan on May 9, 1983. A hearing and oral argument in this cause was held in South Bend, Indiana on May 19, 1983. At that time the defendant's motion to join DOL was dismissed without prejudice; plaintiff's motion for class certification was granted. Defendant's motion to dismiss was ordered merged with the pending motion for summary judgment and a briefing schedule was set. Further, the defendant was ordered to notice the DOL for purposes of any intervention.

On June 20, 1983, plaintiff amended his complaint to add State Review Board members Adams, Hutson and Skinner as defendants. The defendants filed their answer and cross-claim against the DOL. Subsequently, DOL filed its answer and moved to intervene as a party defendant October 12, 1983. Pursuant to a stipulation, defendants agreed to dismiss their cross-claim if DOL's motion to intervene was granted. Such motion was granted by this court on October 17, 1983. DOL filed its cross-motion for summary judgment on October 31, 1983. A hearing was held on the motions for summary judgment on December 11, 1983 in South Bend, Indiana at which time the matter was taken under advisement. All briefs having been filed, this matter is ripe for ruling. Jurisdiction is predicated upon 28 U.S.C. § 1331 and § 1343.

II.

A.

Plaintiff challenges the IESD interpretation of § 22–4–15–4 of the Indiana Unem-

ployment Insurance Law. This statute requires that unemployment compensation payable to a laid-off worker be reduced by the amount of pension income the individual receives "... under any plan ... whereby the employer contributes a portion or all of the money." Ind.Code § 22–4–15–4(a)(2) (Burns Supp.1983).[1] Indiana enacted this statutory requirement for offset in response to a 1980 amendment to the Federal Unemployment Tax Act (FUTA), 26 U.S. C.A. § 3301 *et seq.* (West 1979 & Supp. 1983).

FUTA requires, as a condition for granting federal unemployment tax credits to employers in each state, that the state unemployment compensation law conform to certain minimum federal requirements. *See* 26 U.S.C.A. § 3304(a). If a state law meets these requirements, the Secretary of Labor must approve the law and certify that state to the Secretary of the Treasury. *See* 26 U.S.C.A. § 3304(a), (c). To receive approval, the state law must contain, *inter alia,* the provision required by 26 U.S.C.A. § 3304(a)(15). As originally enacted, this provision required the states to reduce the amount of a claimant's unemployment compensation by the amount the individual received from a governmental or other pension based upon previous work.

In 1980, Congress modified 26 U.S.C. § 3304(a)(15). As amended, the statute requires the states to reduce the amount of a claimant's unemployment compensation only in certain situations where the

> pension, retirement or retired pay, annuity, or similar payment is under a plan maintained (or contributed to) by a base period employer or chargeable employer (as determined by applicable law) ... 26 U.S.C.A. § 3304(a)(15)(A)(i) (West Supp.1983).

**1.** The Indiana statute specifically includes Social Security pensions in its offset requirement:
> For the purposes of this subdivision (2), federal old age, survivors and disability insurance benefits will be considered payments under a plan of an employer whereby the employer maintains the plan or contributes a portion or all of the money to the extent required by federal law.

The Secretary of Labor, as the administrator of the federal unemployment insurance certification statute, has interpreted § (A)(i) as requiring that pension income, including Social Security pension income, be offset if the unemployment claimant's base period or chargeable employer contributes to the pension plan under which the pension is received, subject to the limitation of 26 U.S.C.A. § 3304(a)(15)(B). DOL's Employment and Training Administration issued an interpretative ruling known as "Unemployment Insurance Program Letter No. 7–81" (UIPL 7–81), which described the Secretary's position as follows:

> [I]f an individual retires from company C to collect Social Security and then goes to work for company D where the individual is also covered under the Social Security Act, and thereafter the individual is terminated, the Social Security pension would then be deductible since company D (base period employer) contributed to the same plan as company C. UIPL 7–81, 47 Fed.Reg. 29904, 29906 (July 9, 1982). *See also Cabais v. Egger,* 690 F.2d 234, 241–43 (D.C.Cir.1982).

## II.

The plain language of § (A)(i) requires the offset of a pension payment whenever a base period employer also contributes to the same plan from which a claimant draws his pension. Section (A)(ii) removes from the pension offset requirement all pensions, except for Social Security and Railroad Retirement, that were not enhanced by the base period employment. Finally, § (B) allows states to reduce any offset by the amount of the individual's pension contribution.[2]

> Ind.Code § 22–4–15–4(a)(2) (Burns Supp. 1983).

**2.** Indiana reduces the offset to the extent that a person has contributed to the pension payments, i.e., fifty percent in the case of Social Security. See Ind.Code § 22–4–15–4 (Burns Supp.1983).

Plaintiff contends, however, that the statute permits an offset only when the claimant's base period employer was also the employer under which he established his eligibility for pension payments. Plaintiff attempts to support his construction of the statute with numerous portions of legislative history seemingly contrary to the apparent meaning of the statute.[3] He argues that the legislative history is a clear indication of congressional intent and is consistent with the overall scheme and purpose of the statute.

Though plaintiff perceives the legislative history of this statute to be absolutely clear as to the proper construction of § (A)(i), this court takes issue with such position. The respective parties in this action have submitted to the court lengthy and well-researched briefs on the interpretation of § (A)(i) and each side has come to conflicting conclusions as to the meaning of the same legislative materials. "The proper function of legislative history is to solve, and not create, an ambiguity." *United States v. Rone*, 598 F.2d 564, 569 (9th Cir.1979), *cert. denied sub nom. Little v. U.S.*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). Under circumstances such as these, to the extent that there is ambiguity in the legislative history, the court must look primarily to the statutes themselves for the legislative intent. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 412 n. 29, 91 S.Ct. 814, 821 n. 29, 28 L.Ed.2d 136 (1979).

■ While the purpose of statutory interpretation is the implementation of legislative intent, the first level of analysis is the language of the statute. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 187, 96 S.Ct. 1375, 1378, 47 L.Ed.2d 668 (1976); *Matter of Chicago, Milwaukee, St. Paul and Pacific Railroad Company*, 673 F.2d 169, 172 (7th Cir.1982). When a statute is unambiguous, legislative history should not generally be used to determine its meaning. *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978); *Pullman-Standard v. ICC*, 705 F.2d 875, 879 (7th Cir.1983). Reliance on the legislative history is appropriate if either the statutory language were ambiguous or compliance produced an absurd or unjust result. *Pullman-Standard, Inc. v. ICC, supra*, 705 F.2d at 879; *United States v. Tex-Tow, Inc.*, 589 F.2d 1310, 1313 (7th Cir.1978). Neither situation is present in this action.

■ Section (A)(i) plainly states that social security benefits offset unemployment benefits if the base period employer makes social security contributions. The language of the statute is so lucid on this particular issue it would be inappropriate to resort to legislative history. Section (A)(i) does not contain undefined terms or ambiguous language.[4] In such case, the plainer the language, the more convincing contrary legislative history must be. *United States v. United States Steel Corp.*, 482 F.2d 439, 444 (7th Cir.1973), *cert. denied,*

---

**3.** Plaintiff's initial brief in support of his motion for summary judgment focused on statements made by Senators Boren, Dole and Bradley. In his memorandum opposing DOL's cross-motion for summary judgment, plaintiff elaborated on the legislative background against which these statements were made.

As to case law, plaintiff relied on the analysis in *Bowman v. Stumbo*, Civ. No. C 82–0244–L(A) (W.D.Ky. June 29, 1983), *appeal pending* (6th Cir.), *Rivera v. Patino*, 543 F.Supp. 1160 (N.D. Cal.1982), *rev. sub nom. Rivera v. Becerra*, 714 F.2d 887 (9th Cir.1983), and *Cullen v. Roberts*, 93 A.D.2d 907, 461 N.Y.S.2d 592 (1983). As noted above, the Ninth Circuit reversed *Rivera*. The district court in *Stumbo* provided no explanation for its conclusion. Moreover, *Stumbo* is presently on appeal to the Sixth Circuit. The

authority of *Cullen* is also questionable since it relied exclusively on the district court decision in *Rivera*.

**4.** Section (A)(i) conditions the pension offset upon contributions to a pension plan. Plaintiff contends that when an employee has already established his entitlement to the Social Security benefit as a result of work performed for an earlier, non-base period employer, the base period employer is simply paying a tax into the system rather than contributing to the employee's plan within the meaning of § (A)(i). In essence, plaintiff argues that payment of taxes into the Social Security System is not synonymous with contributions to a pension plan. This court finds that argument to be without merit.

414 U.S. 909, 94 S.Ct. 229, 38 L.Ed.2d 147 (1973), and, as noted above, the legislative history in this case is ambiguous and has been either explained away, distinguished or adapted to the positions of both parties in this proceeding.

Moreover, the plain meaning of the statute is consistent with the policy of the legislation. The 1980 Amendment to § 3304(a)(15) was intended to ameliorate the one hundred percent offset of all pension benefits imposed by the 1976 law. *See* 126 Cong.Rec. 26040 (1980). This result is not so incongruous with the purposes of the federal-state insurance system—... to provide some financial security to an unemployed worker so that he or she could find substantially similar work without being forced to resort to life savings, charity or welfare. H.R.Rep. No. 615, 74th Cong., 1 Sess. 7 (1935)—as to be deemed unreasonable.

Further, this court is guided by the judicial interpretation of § (A)(i) by the Ninth Circuit Court of Appeals in *Rivera v. Becerra*, 714 F.2d 887 (9th Cir.1983), *petition for cert. filed sub nom. International Union, UAW v. Becerra*, No. 83–795 (Nov. 10, 1983). The plaintiff there contended, as plaintiff does here, that Congress intended to apply the offset only when the claimant had qualified for Social Security pension payments as a result of preretirement employment with the base period employer. The Ninth Circuit expressly rejected this contention based on the plain meaning of the statute:

> Section 3304(a)(15)(A)(i) says that if a base period employer contributes to social security, then the unemployment benefits must be offset by the social security benefits. The statutory language does not permit another interpretation. The offset applies under section 3304(a)(15)(A)(i) if the base period employer *"contributed"* to the "plan" from which the pension benefits are derived. Unlike section 3304(a)(15)(A)(ii), which does not apply to social security benefits, section 3304(a)(15)(A)(i) does not say the offset will not apply if the base period

contributions did not affect eligibility for or the amount of the pension benefits. *Id.* at 892.

The Ninth Circuit also concluded that the plain meaning of § (A)(i) should take precedence over the legislative history in determining congressional intent. The court stated:

> The statutory language in question was part of an attempt by Congress to ameliorate the harsh effects of earlier legislation, and the line drawn by the statute is neither so unreasonable nor so at variance with the policy of the legislation as to justify disregarding the clear meaning of the statute's words.

> *Id.* at 893.

The plain meaning of § (A)(i) conclusively establishes Congress' intent. Congress clearly intended an offset for most Social Security pension payments and the Secretary's interpretation to that effect (and Indiana's conforming interpretation of § (A)(i)) is therefore valid and correct. Accordingly, there being no genuine issue of material fact now before the court, it is the order of this court that the motion for summary judgment of the defendant-intervenor, the United States Department of Labor, be, and hereby is, GRANTED: the motion for summary judgment of the plaintiff, Harry S. Peare, is DENIED. Since the motion for summary judgment of the Department of Labor effectively moots any claim of plaintiff, Harry S. Peare, against defendants, Harry T. McFarland, William H. Skinner, Paul M. Hutson and Daniel L. Adams, this case is DISMISSED.

SO ORDERED.